UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| LONDELL HARPER, JR. | CIVIL ACTION NO. 05-0439-P |
| versus | JUDGE HICKS |
| ANGIE HUFF, ET AL. | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

Londell Harper, Jr. ("Plaintiff") is an inmate at David Wade Correctional Center. He alleges that he follows the Wicca religion and complains that the prison chaplain has not provided him a book called *A Witches Bible*. The named defendants are Chaplain Ray Anderson and Deputy Warden Angie Huff. Defendants have filed a Motion for Summary Judgment (Doc. 17). It is recommended, for the reasons that follow, that the motion be granted.

**Summary Judgment Record**

The Motion for Summary Judgment is supported by affidavits from Chaplain Anderson and Deputy Warden Huff, as well as attached materials. In response to the motion, Plaintiff filed an affidavit (Doc. 21). He has also submitted a Statement of Issues (Doc. 16) that is certified as true in compliance with 28 U.S.C. § 1746 and, therefore, competent summary judgment evidence. Hart v. Hairston, 343 F.3d 762, n. 1 (5th Cir. 2003).

Plaintiff testifies that in March 2000 he was introduced to the Wicca religion. He soon began studying the religion, ordered books on the subject, and began following the Wicca way of life, including observation of a religious diet. Plaintiff corresponded with a follower of the Wicca religion who suggested he talk to his chaplain for more information on the religion. The writer also recommended some "good books to read" on the subject, including *A Witches Bible* by Farrar.[1] Plaintiff testifies that he made repeated requests to the chaplain for a copy of *A Witches Bible* and, after receiving no answer, he filed a grievance pursuant to the prison's administrative remedy procedure.

Chaplain Anderson responded with a letter and informed Plaintiff that any religious material that he desired "must be purchased of yourself, if the Chaplaincy does not have donated material to give." He added that the Chaplaincy did not then have any Wicca donated material.

Deputy Warden Huff referenced the chaplain's letter in a formal response to the grievance. She told Plaintiff that "it is the individual's responsibility to purchase his personal religious materials unless the materials in question are donated from outside sources." She continued: "If you know of a source that would be willing to donate materials, Chaplain Anderson would work with you to secure such items as long as they meet security

---

[1] Information about the book that is available on the Internet indicates that it was written by Janet and Stewart Farrar. The complete title is *A Witches Bible: The Complete Witches Handbook*. The book discusses subjects such as rites, spells, witchcraft and sex, running a coven, clairvoyance, and astral projection.

requirements." Plaintiff appealed that decision, and it was affirmed at the second and final step.

Chaplain Anderson testifies in his affidavit, consistent with his letter, that, "As with all religions practiced at DWCC, it is the inmate's responsibility to purchase his personal religious materials, unless the materials in question are donated from outside sources." He adds that he explained to Plaintiff that the prison did not have any Wicca donated material and indicated his willingness to work with a source who was willing to donate materials for Plaintiff. Chaplain Anderson denies that any of his actions were taken to deny Plaintiff an opportunity to practice his religious beliefs or based on favoritism for other religious groups. He also testifies that the more than 1,000 inmates at DWCC practice more than ten different religious denominations. He says that prison financial resources would be seriously strained if the prison were required to purchase personal religious materials for each member of each religious group. Deputy Warden Huff offers similar testimony.

**First Amendment and The RLUIPA**

The First Amendment right to free exercise of religion, made applicable to the states by the Fourteenth Amendment, is not lost to convicted prisoners, but lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, which is justified by the considerations underlying the penal system. The limitations on the exercise of constitutional rights arise from the fact of incarceration and from valid penological objectives such as deterrence of crime and promoting institutional security. O'Lone v. Estate

of Shabazz, 107 S.Ct. 2400, 2404 (1987). The Supreme Court has interpreted the First Amendment to require the courts to afford appropriate deference to prison officials by judging prison regulations that are alleged to infringe on constitutional rights under a "reasonableness" test that is less restrictive than the test ordinarily applied to alleged infringements of fundamental rights. Id.

Congress essentially supplemented the First Amendment rights of many prisoners and other citizens when it enacted the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), which provides: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1. See Adkins v. Kaspar, 393 F.3d 566-67 (5th Cir. 2004). The Fifth Circuit held in Adkins that government action does not create a "substantial burden" on a religious exercise unless it "truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." Id. at 570. The burden is on the plaintiff to demonstrate that the government practice complained of imposes a "substantial burden" on his religious exercise. Id. at 567.

**Analysis**

The Fifth Circuit addressed a similar case in the context of a First Amendment challenge in Frank v. Terrell, 858 F.2d 1090 (5th Cir. 1988). A Jewish inmate complained that the prison would not provide him, free of charge, religious materials including books. He did not assert that he was forbidden to possess and use the items or that he had been denied the opportunity to obtain the materials on his own. He simply complained that the prison refused to furnish the items, free of charge, for his use. The district court dismissed the action as frivolous, and the Fifth Circuit affirmed. The Court quoted from Chief Justice Burger's concurring opinion in Cruz v. Beto, 92 S.Ct. 1079, 1082 (1972) in which he stated:

> "There cannot possibly be any constitutional or legal requirement that the government provide materials for every religion and sect practiced in this diverse country. At most, [religious] materials cannot be denied to prisoners if someone offers to supply them."

See also Mack v. Reynolds, 2000 WL 1808277 (N.D. Tex. 2000) ("There is no legal or constitutional requirement that inmates be provided with religious materials at government expense."). These cases foreclose Plaintiff's First Amendment claim. The uncontested summary judgment evidence shows that Plaintiff was not denied the opportunity to purchase or receive donated items. He complains only that the prison did not furnish the materials to him free of charge.

There is also no basis for a claim under the RLUIPA. The prison's refusal to provide a copy of *A Witches Bible* to a Wiccan inmate does not impose a "substantial burden" on the inmate's exercise of his religion. The inmate is free to obtain the book either by purchase

or from donated sources. Plaintiff does not ask for relief from a burden imposed by prison officials. Rather, he asks that he be afforded a financial benefit. If the Act were interpreted to require the government to purchase religious books for citizens, it might subject the Act to an attack under the Establishment Clause that was avoided in <u>Cutter v. Wilkinson</u>, 125 S.Ct. 2113 (2005). There is also no basis for an Equal Protection claim because there is no competent summary judgment evidence that the prison provided free religious materials to followers of any other religion. All of the competent evidence is to the contrary.

Accordingly;

**IT IS RECOMMENDED** that the **Motion for Summary Judgment (Doc. 17)** be **GRANTED** and that Plaintiff's complaint be DISMISSED WITH PREJUDICE.

<u>**Objections**</u>

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 10th day of April, 2006.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE